## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

NORA L. SANDOVAL,

        Plaintiff,

vs.                                                            No. CV-06-278 JC/RLP

THE UNITED STATES DEPARTMENT
OF JUSTICE, CIVIL DIVISION,
RADIATION EXPOSURE COMPENSATION
PROGRAM,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on *Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment*, filed June 6, 2006 (*Doc. 7*) ("Motion").  This action is brought as an appeal from a final determination of the United States Department of Justice (DOJ) denying Plaintiff's claim for compensation under the Radiation Exposure Compensation Act, 42 U.S.C. § 2210, note (1994) (RECA or "the Act").  Plaintiff contends the DOJ erroneously determined that her sworn affidavit, together with her husband's death certificate, were insufficient  "medical documentation" within the meaning of RECA to establish that her deceased husband suffered from a specified, compensable disease.  The Court has considered the parties' submissions, the record on appeal, and the relevant authority.  For the reasons discussed below, the administrative decision to deny Ms. Sandoval's claim must be affirmed.

I.       **Background**

Plaintiff Nora L. Sandoval's late husband, Procopio Sandoval, worked in a uranium mill in the western part of the state of New Mexico as a laborer, loader operator, and crushing plant operator beginning in 1953 and continuing until the time of his death in 1972.  All nineteen years of his employment occurred during the employment eligibility period specified by RECA.

RECA and its implementing regulations require, *inter alia,* medical documentation that a claimant or beneficiary had a compensable illness.  Due to the passage of time between Mr. Sandoval's death and the filing of the claim, Ms. Sandoval encountered significant difficulty in obtaining written medical documentation relating to her husband's medical condition before or at the time of his death.  Mr. Sandoval died at St. Joseph's Hospital in Albuquerque, New Mexico on November 11, 1972.  His death certificate lists "cerebrovascular accident" as the cause of death and indicates that he had suffered from hypertensive cardiovascular disease for a period of 10 years prior to death.  A.R. at 0146, 0047.  However, no further medical information was available from the former St. Joseph's Hospital, which issued written correspondence to Ms. Sandoval stating that it was unable to produce any records establishing that Mr. Sandoval was ever seen or treated at the facility.  A.R. at 0072-0077.  Ms. Sandoval asserts, and the Court does not doubt, that her husband was also seen and treated periodically for respiratory illness, fatigue, and general malaise at a clinic owned and operated by his former uranium industry employer, Anaconda Company.  Again, however, she was unable to obtain any record of such visits from Anaconda's successor in interest.  A.R. at 0063-64, 0072, 0105.  In short, despite exhaustive efforts on her part and seven 6-month extensions of time granted by the DOJ, Ms. Sandoval failed in her attempt to obtain medical documentation in support of her claim under RECA.

Ms. Sandoval filed her claim for benefits on December 1, 2003. *See* A.R. at 0120. Ms. Sandoval claimed that her husband suffered from *all* of the compensable diseases under the Act, those being lung cancer, pulmonary fibrosis, fibrosis of the lung, renal cancer, silicosis, cor pulmonale related fibrosis of the lung, pneumoconiosis, and chronic renal disease. A.R. at 0130. What she ultimately submitted in support were her husband's death certificate; written correspondences from St. Joseph's Hospital and Anaconda's successor as discussed; and her own sworn affidavit indicating that her husband had suffered from symptoms consistent with the covered illnesses. *See* A.R. at 0061-62, 0120. Regrettably, her claim was denied for lack of supporting medical documentation in a written decision issued by the Assistant Director on September 12, 2005. A.R. at 0046-0048. That denial was affirmed by the Appeals Officer in an Appeal Memorandum dated February 7, 2006. A.R. at 0002-0014.

Ms. Sandoval challenges the denial of her claim for compensation under RECA, contending that the denial of her claim should be set aside under the statutory review standard as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. *See* RECA, Sec. 6(l). Ms. Sandoval contends that under the circumstances of her case, and given the RECA's requirement at Sec. 6(b)(1) that "[a]ll reasonable doubt with regard to whether a claim meets the requirements of...[the Act]...shall be resolved in favor of the claimant," the DOJ should have deemed the supporting documents she provided adequate. Ms. Sandoval seeks reversal of the DOJ's denial of her claim and requests that this Court enter a judgment ordering compensation for her in the amount of $100,000 as an eligible survivor of a "section 5" uranium worker.

Ms. Sandoval also asserts, with little development or support, that the DOJ's decision

operates to deny her both due process of law and equal protection of the laws under the Fifth Amendment to the United States Constitution.

## II.   <u>Standard of Review</u>

This matter is before the Court for review of agency action in accordance with the standard set forth by RECA, a standard identical to that found in Section 6 of the Administrative Procedures Act.   *See* 42 U.S.C. § 2210 note; 5 U.S.C. § 706(2)(A).   Accordingly, it is not proper for the Court to apply a summary judgment standard when reviewing the denial of Ms. Sandoval's claim.   Instead, Defendant's document styled "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" must function primarily as an appellate brief on the merits insofar as it relates to the final agency determination.   *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579, 1580 (10th Cir. 1994) ("Reviews of agency action in the district courts must be processed as appeals. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure.   Motions to affirm and motions for summary judgment are conceptually incompatible with the very nature and purpose of an appeal."); *Nickol v. U.S.A. and Morton*, 501 F.2d 1389, 1391 (10th Cir. 1974) (where the determination is under APA § 706, the district court is precluded from entering Fed.R.Civ.P.56 type summary judgment).

RECA provides for judicial review of denial of compensation claims only in the United States District Court.   "The court shall review the denial on the administrative record and shall hold unlawful and set aside the denial if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 42 U.S.C. § 2210 note, Sec. 6(1).   Thus, review is narrow and deferential; the agency decision should be affirmed as long as the agency examined the

information and "articulated a rational connection between the facts found and the decision made." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d at 1574.

**III.    Discussion**

A.    Statutory Scheme

RECA was enacted in1990 because it had become apparent that underground uranium miners, individuals subjected to atmospheric nuclear test fallout, and their families, suffered injuries believed to have been caused by exposure to large doses of radiation.  Pub.L.No. 101-426, 104 Stat. 920 (as amended at 42 U.S.C. § 2210 note).  In particular, when enacting RECA, Congress found that "radiation released in underground uranium mines that were providing uranium for the primary use and benefits of the nuclear weapons program of the United States Government exposed miners to large doses of radiation and other airborne hazards in the mine environment that together are presumed to have produced an increased incidence of lung cancer and respiratory diseases among these miners."  42 U.S.C. § 2210 Sec. 2(a)(3).  Congress determined that "the United States should recognize and assume responsibility for the harm done to these individuals" and further recognized that "the lives and health of uranium miners and of individuals who were exposed to radiation were subjected to increased risk of injury and disease to serve the national security interests of the United States."  RECA, Sec. 2(a)(4)(5).

Section 5 of RECA authorizes payment of up to $100,000 to individuals who developed certain specified illnesses following employment in uranium mines and to designated survivors in the case of deceased individuals.  Section 6(c)(4) provides for survivors, including surviving spouses, to file claims and receive payments for eligible individuals who are deceased.  *See id.,* Secs. 6(a)-(b), 5(a)(2)(B).  On July 10, 2000, RECA was amended to expand coverage to include

5

individuals, such as Mr. Sandoval, who were employed in the uranium production industry as mill

workers or as uranium ore transporters for at least 1 year between the dates of January 1, 1942

and December 31, 1971.  Pub.L. 106-245.

RECA is administered by the Radiation Exposure Compensation Program (RECP), a

"component of the Constitutional and Specialized Torts Litigation Section of the Department of

Justice."  28 C.F.R. § 79.2(n).  The responsibility for administering RECA, including the

establishment of procedures whereby individuals may submit claims and in determining whether

each claim filed under RECA meets the requirements of the Act was assigned to the Attorney

General.    RECA provides that the Attorney General should work in consultation with the

Surgeon General to establish guidelines for determining what constitutes written medical

documentation.  Section 5 of RECA covers claims on behalf of individuals employed in uranium

mills.  Section 5 also provides that the Attorney General "may consult with the surgeon general

with respect to making determinations" pursuant to those guidelines."  RECA, Sec. 6(b).  RECA

requires that an individual seeking recovery as a mill worker submit written medical

documentation that the worker, following at least one year of covered employment, "developed

lung cancer or a nonmalignant respiratory disease or renal cancers and other chronic renal

disease...."  42 U.S.C. § 2210 note.  In implementing this requirement, RECP defines "[m]edical

document, documentation, or record" as "any contemporaneous record of any physician, hospital,

clinic, or other certified or licensed health care provider, or any other records routinely and

reasonable relied on by physicians in making a diagnosis."  28 C.F.R. § 79.2(k).  The

implementing regulations require that, in the case of a deceased claimant, a beneficiary may

submit any of the following forms of medical documentation:

6

(1) a pathology report of a tissue biopsy;
(2) an autopsy report;
(3) if an ex-ray exists, the x-ray and interpretive reports of the x-ray by a maximum of two NIOSH certified "B" readers classifying the existence of a disease of category 1/0 or higher according to a 1989 report of the International Labor Office;
(4) if no x-rays exist, an x-ray report;
(5) a physician summary report;
(6) a hospital discharge summary report;
(7) a hospital admitting report; or
(8) a death certificate that is signed by a physician at the time of death.

28 C.F.R. § 79.46(a). A surviving beneficiary of a deceased mill worker may also submit the medical documentation required for a successful live miner claim, though living claimants face a higher burden.[1] 28 C.F.R. 79.46(d)(1)(ix).

B.      Denial of Ms. Sandoval's Claims

The record indicates that Ms. Sandoval's claims were denied because she failed to provide proper medical documentation from which the DOJ representative could determine that her late husband suffered from a compensable disease. Specifically, the Assistant Director determined that Mr. Sandoval's death certificate does not establish a compensable illness and Ms. Sandoval's affidavit cannot be considered for purposes of satisfying the medical documentation requirement of the Act per the regulations. AR at 0047. The DOJ first recognized that the distinction between the forms of medical documentation for living claimants versus those for beneficiaries

---

[1]Living claimants must provide either a qualifying arterial blood gas study or a written diagnosis by a physician, as well as one of the following: (1) a chest x-ray administered in accordance with standard techniques accompanied by interpretive reports of the x-ray by a maximum of two "NIOSH" certified "B" readers, classifying existence of disease of category 1/0 or higher according to a 1989 report of the International Labor Office; (2) high-resolution computed tomography scans, including computer-assisted tomography scans, magnetic resonance imaging scans, and positron emissions tomography scans, and interpretive reports of such scans; (3) a pathology report of a tissue biopsy; or (4) a qualifying pulmonary function test. 28 C.F.R. § 79.46(d)(3).

inures to the beneficiaries in recognition of the difficulties faced by beneficiaries such as Ms.

Sandoval.  The DOJ declined, however, to relax the requirements such that Ms. Sandoval's

affidavit would suffice as medical documentation, reasoning that Congress specifically articulated

limited circumstances not present here, under which affidavit evidence may be considered.[2]  Thus,

the DOJ determined, the RECP was precluded from taking Ms. Sandoval's affidavit into

consideration.

 The crux of Ms. Sandoval's challenge to the DOJ's actions in finding her medical

information insufficient is that the "Federal Register indicates that DOJ relied extensively on

information provided by other agencies including the National Institute for Occupational Safety

and Health ("NIOSH") in adopting medical standards to govern RECA claims."  Resp. at 18.  Ms.

Sandoval contends that this (1) indicates that the DOJ is not an expert in the area of interpreting

medical documentation; and (2) demonstrates that DOJ failed to consult the Attorney General in

determining her claim as contemplated by Sec. 6(b)(2).  Yet, while Section 6(b)(2)(A) of RECA

provides that the Attorney General *shall* consult with the Surgeon General for purposes of

establishing *guidelines* for determining what constitutes proper written medical documentation,

Section 6 later provides only that the Attorney General "*may* consult with the Attorney General

with respect to making determinations pursuant to the *guidelines issued*...."  42 U.S.C. § 2210

note (emphasis added).  Accordingly, the RECP is not required to consult with the Surgeon

General in the determination of individual claims.  Moreover, The Supreme Court has held that

"[t]he identification and classification of medical eligibility criteria necessarily require significant

---

[2]The substantive use of affidavits is limited to the employment context.  *See* 28 C.F.R. §
79.4(c).

expertise and entail the exercise of judgment grounded in policy concerns.  In those

circumstances, courts appropriately defer to the agency entrusted by Congress to make such

policy determinations." *Pauley v. Beth Energy Mines*, 501 U.S. 680, 696 (1991) (internal

citations omitted).  This remains the law notwithstanding the Act's requirement that all reasonable

doubt be resolved in favor of the claimant.  The record indicates that no reasonable doubt existed

for complete want of proper medical documentation establishing eligibility.  A.R. at 0014, 0047.


   C.  Constitutional Claims

   Ms. Sandoval also contends that the denial of benefits to her worked a violation of her

right to due process and equal protection of the laws.  Neither of these claims is colorable.  First,

as Defendant points out, the law does not recognize a "due process right to have an affidavit

constitute medical documentation."   Mot. at 20, Reply at 9 (citing *Pension Benefit Guaranty*

*Corp. v. LTV Corp.*, 496 U.S. 633, 653-55 (1990)("[C]ourts are not free to impose upon agencies

specific procedural requirements that have no basis in the APA."; (*Vt. Yankee Nuclear Power*

*Corp. v. Natural Res. Defense Council, Inc.,* 435 U.S. 519, 543-49, 558 (1978) (it is a "very

basic tenet of administrative law that agencies should be free to fashion their own rules of

procedure); *Fed. Communications Comm'n v. Schreiber*, 381 U.S. 279, 289-94

(1965)("[A]gencies should be free to fashion their own rules of procedure and to pursue methods

of inquiry capable of permitting them to discharge their multitudinous duties."); *accord, Tsegay v.*

*Ashcroft*, 386 F.3d 1347, 1353, 1355-56 (10th Cir. 2004)).  Nor does the RECA or its

implementing regulations, confer such a right, without which there is no claim.

   Ms. Sandoval's equal protection claim cannot endure either, in part because Ms. Sandoval

offers no competent evidence that similarly situated individuals were treated differently. Constitutional equal protection requires that "all persons similarly situated should be treated alike." *City of Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "The equal protection clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "If a legislative classification or distinction neither burdens a fundamental right nor targets a suspect class, [courts] will uphold [it] so long as it bears a rational relation to some legitimate end." *Vacco v. Quill*, 521 U.S. 793, 799 (1997).

Here, if Ms. Sandoval's position is read to be that affidavits have been permitted in some cases, no evidence exists to establish that even one affidavit has ever been accepted as medical documentation for purposes of satisfying the medical documentation requirement of the Act. This is equally true for both living and deceased claimants. If, instead, the Court understands her position to be that deceased claimants are treated differently than living claimants under the policy--or even that more recently deceased claimants are treated differently than long-time deceased claimants--her argument is still destined to fail, for the RECP's reasonable requirement of certain proof of covered injury finds its rational basis in the need to limit recovery to those who actually suffered from a compensable disease. The regulation on the use of affidavits to meet medical criteria also furthers the goal of "utiliz[ing] existing records so that claims can be resolved in a reliable, objective, and non-adversarial manner, quickly and with little administrative cost to the United States or to the person filing the claim." 28 C.F.R. § 79.1. Thus, the documentation requirement is consistent with the purpose of the Act, and under Ms. Sandoval's would-be interpretation thereof, individuals who did not suffer compensable injury could recover.

10

V.      <u>Conclusion</u>

The Court appreciates Ms. Sandoval's plight insofar as it has proven virtually impossible for her to unearth records that could conclusively establish the nature of her husband's illness(es). Moreover, she was not neglectful in failing to obtain substantiating documentation decades ago, when written medical documentation might have been available, for Ms. Sandoval had no claim under RECA until the Amendment in the year 2000.  Nonetheless, the RECA and its implementing regulations as found in RECP legitimately require certain proof, which they must in order to insure that the available funds are distributed in accordance with the purposes of the Act. The denial of Ms. Sandoval's claim was reasonable in the absence of proof of covered illness. That Ms. Sandoval's claim is forestalled for lack of documentation is lamentable, for one could reasonably speculate that Mr. Sandoval suffered from a compensable illness, having worked in the uranium mines for 19 years where 1 year is sufficient per the RECA.   Nonetheless, this Court cannot adjudge it an abuse of discretion on the part of the DOJ to require written medical documentation of a specified, compensable illness and define that term as the DOJ has.  Nor, as discussed, does the denial of benefits under the circumstances of this case work a violation of Ms. Sandoval's right to due process or equal protection under the United States Constitution.

WHEREFORE,

**IT IS ORDERED** that Defendant's document styled *Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment*, filed June 6, 2006 (*Doc. 7*), is GRANTED in that **the final determination of the Department of Justice denying Ms. Sandoval's claim to benefits under the RECA is UPHELD**.

11

**IT IS FURTHER ORDERED** that Plaintiff's constitutional claims are **DISMISSED**

**with prejudice.**

Dated this 7th day of September, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

      Roberto C. Armijo, Esq.
      Civerolo, Gralow, Hill & Curtis
      Albuquerque, New Mexico

Counsel for Defendants:

      Richard G, Lepley, Esq.
      Julia J. Yoo, Esq.
      U.S. Department of Justice
      Washington, D.C.


      Peter D. Keisler
      Assistant Attorney General

      Jan Mitchell
      Civil Chief
      United States Attorney's Office
      Albuquerque, New Mexico